IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER AND DIANE FREITAS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 11-3146-CV-SW-RED |
| | ) |
| WELLS FARGO HOME MORTGAGE, INC., | ) |
| d/b/a AMERICA's SERVICING COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Defendant")[1] Motion to Dismiss Complaint (Doc. 7), which seeks the dismissal of Plaintiffs' Original Petition ("Complaint") in its entirety with prejudice.

## INTRODUCTION

The Complaint alleges that Plaintiffs Christopher and Diane Freitas ("Plaintiffs") received a home loan and mortgage ("mortgage") through BNC Mortgage, Inc. in 2006 in order to purchase their current residence. The Complaint further states that BNC Mortgage, Inc was a lending arm for Lehman Brothers Bank. After Lehman Brothers Bank went into bankruptcy in 2008, Defendants began servicing Plaintiffs' home loan.

Beginning in 2008, Plaintiffs tried to negotiate with Defendant for the modification of their mortgage under the Home Affordable Modification Program ("HAMP"). Pursuant to the provisions in HAMP, if an individual is eligible to participate in the program, the servicer of the mortgage will

---

[1] Plaintiffs sued Wells Fargo Home Mortgage, Inc., which Defendant claims is a division of Wells Fargo Bank, N.A.

offer the individual a Trial Period Plan ("TPP") agreement which allows the individual to make modified mortgage payments for a period of time before the modification may become permanent. *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 347-48 (D. Mass. 2011). According to the Complaint, Defendant's representatives "insured" (assured?) Plaintiffs that Plaintiffs would qualify for a modification and that their mortgage would be modified upon receipt of requested documentation. However, the Complaint also alleges that other representatives of Defendant informed Plaintiffs that they did not qualify for a modification. Plaintiff Christopher Freitas stated that "[he] could never get a straight answer" in the Affidavit of Chris Freitas ("Affidavit") attached to the Complaint. Plaintiffs allege that based on these representations, they stopped making mortgage payments in 2009. Plaintiffs were never offered a TPP agreement nor was their mortgage ever modified. Thereafter, Defendant moved to foreclose upon Plaintiffs' home because Plaintiffs had stopped making their loan payments.

In response to the notice of foreclosure, Plaintiffs moved for a temporary restraining order and filed their Complaint against Defendant in state court, which was later removed by Defendant to this Court. The Complaint asserts three counts against Defendant. Count I is for fraudulent misrepresentation, Court II is for promissory estoppel and Count III is for injunctive relief.

Defendant now moves to dismiss the Complaint on the basis that no private cause of action was created under HAMP and Plaintiffs' Complaint must be dismissed because Plaintiffs' state law claims are in actuality an attempt to seek relief under HAMP.

**STANDARD OF REVIEW**

When the Court reviews a motion to dismiss, it must "take[] all allegations in the complaint as true and draw[] all reasonable inferences in favor of the non-moving party". *O'Neal v. State*

2

*Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).

## DISCUSSION

In the Motion to Dismiss, Defendant cites to several district court cases recognizing that there is no private cause of action under HAMP, which means that a plaintiff cannot seek to enforce the HAMP guidelines or force a lender to participate in the program. *See Vida v. OneWest Bank, F.S.B.*, No. 10-987-AC, 2010 WL 5148473, at *3-4 (D. Or. Dec. 13, 2010) (collecting cases). Plaintiffs do not dispute this point. In their attempt to show that their cause of action should be allowed against Defendant, Plaintiffs first argue that their state law claims are not preempted under HAMP. However, as this issue was not raised by Defendant and is not pertinent to the Court's decision, the Court will decline to address the issue of preemption.

Plaintiffs next argue that they have not asserted any claim under HAMP and have only mentioned the program in passing in their Complaint. However, the Complaint alleges that since the program was created, Plaintiffs "have been attempting to get a modification under HAMP." (Complaint ¶ 10). Although HAMP is not mentioned again, it is clear that the modification Plaintiffs sought was under the HAMP program. All of the representations which Plaintiffs argue give rise to their state law claims are representations allegedly made by Defendant's representatives concerning and during Plaintiffs' application process for relief under HAMP. The Affidavit attached to the Complaint further makes it appear that the modification sought was pursuant to HAMP, as the Affidavit discusses the program and in the same paragraph states that Plaintiff Christopher Freitas has been attempting to get a modification (Affidavit ¶ 6.). The Affidavit further accuses Defendant of "conspiring to give the appearance that they are engaging in HAMP per federal regulations, however, their true intention is stall, delay, and deny my modification ..." (Affidavit ¶ 17).

3

Plaintiffs final argument is that Defendant has attempted to go beyond the scope of the pleadings with the argument that HAMP does not afford individuals a private cause of action. However, the discussion above demonstrates that the Complaint and the Affidavit attached to the Complaint both refer to the program and in fact, the Complaint admits that Plaintiffs sought a modification under the program. In any event, Defendant is not seeking to introduce any materials outside the pleadings, but is merely arguing that the Complaint itself seeks relief under HAMP. The Court notes that Plaintiffs specifically request that this Court order Defendant to be "estopped from denying [its] promise to modify Plaintiffs' mortgage loan" and that the loan be modified to terms that are affordable to Plaintiffs. HAMP is the only basis for the type of relief requested by Plaintiffs.

Plaintiffs' argument in response to the Motion to Dismiss are without merit. Thus, the issue becomes whether their Complaint should be dismissed because, as Defendant claims, it is merely an attempt to bring a private cause of action under HAMP using common law claims, or whether Plaintiffs' Complaint sets forth claims that can stand on their own. *See Vida*, 2010 WL 5148473, at *3-4 (finding that the plaintiff's breach of contract claim was not "sufficiently independent [to HAMP] to state a separate state law cause of action"). As has been established, Plaintiffs cannot force Defendant to modify their mortgage under HAMP. Unless Plaintiffs' claims for fraudulent misrepresentation and promissory estoppel can stand on their own, the Complaint must be dismissed.

Plaintiffs' fraudulent misrepresentation[2] claim is deficient for several reasons. The

---

[2] A claim for fraudulent misrepresentation requires a plaintiff to prove:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and

4

Complaint states that some representatives for Defendant indicated that Plaintiffs would qualify for a modification and that the mortgage would be modified, whereas other representatives told Plaintiffs that they did not qualify for a modification. In response to these statements, Plaintiffs stopped making their mortgage payments "in anticipation of the modification." (Complaint ¶ 12). First, the alleged representations by some of Defendant's representatives that Plaintiffs *would* qualify for a modification and that their mortgage *would* be modified once Defendant received necessary documentation are akin to "representations as to expectations and predictions for the future [which] are insufficient to authorize a recovery for fraudulent misrepresentation." *Arnold v. Erkmann*, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996). Even if the statements at issue could constitute fraudulent misrepresentations, one cannot ignore the fact that the Complaint further alleges that other representatives for Defendant informed Plaintiffs that they did not qualify for a modification, causing Plaintiffs to allege that "[they] have been unable to receive a consistent and candid answer from Defendant's representatives regarding a loan modification." In light of these conflicting representations, Plaintiffs are not able to demonstrate that they reasonably relied on any representation which is one of the elements that they must prove. It is not a matter of picking and choosing what you want to hear and Plaintiffs were certainly not justified in stopping their payments completely as that was never a possible option under any circumstance. Finally, it should also be noted that the Complaint fails to plead the fraudulent misrepresentation claim with particularity. *See Akers v. RSC Equip. Rental, Inc.*, No. 4:09CV2022, 2010 WL 2757284, at *5 (E.D. Mo. July 12,

---

proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010) (en banc).

5

2010) (recognizing that a fraudulent misrepresentation claim must meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b)).

Plaintiffs' claim for promissory estoppel is also deficient.[3]  A claim for promissory estoppel must include a promise that is definite and "made 'in a contractual sense.' " *Prenger v. Baumhoer*, 939 S.W.2d 23, 26 (Mo. Ct. App. 1997) (quoting *Clark v. Wash. Univ.*, 906 S.W.2d 789, 792 (Mo. Ct. App. 1995)).  This necessitates "that a promise be as definite and delineated as an offer under contract law." *Prenger*, 939 S.W.2d at 27 n.4.  In this particular case, the alleged promises are clearly not sufficiently definite or made 'in a contractual sense.'  The alleged promises did not contain any details about the terms of modification.  Additionally, the best that can be said as alleged by Plaintiffs is that they had conflicting promises and they could not "receive a consistent and candid answer," indicating that the discussions as a whole were tentative and lacked sufficient detail to constitute a promise.  Moreover, the Court does not see how Plaintiffs can prove that they relied on Defendant's representations to their detriment, one of the elements of a promissory estoppel claim, as they stopped making payments altogether despite the fact that they were never told that they could do so and furthermore, a complete stoppage of Plaintiffs' monthly payments was never an option.  Additionally, Plaintiffs cannot prove the expectation element of a promissory estoppel claim, as nothing indicates that Defendant should have expected Plaintiffs to stop making payments, as they never approved any modification or told Plaintiffs that they could stop making payments under the mortgage.

---

[3] The elements of promissory estoppel are "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 388-89 (Mo. Ct. App. 2010).

6

The deficiencies in Plaintiffs' Complaint demonstrates that the facts do not support Plaintiffs' state law claims, and since Plaintiffs have no right under HAMP to force Defendant into modifying their mortgage, the Complaint must be dismissed.

## CONCLUSION

Plaintiffs had no right, under either state or federal law, to modify their loan payments. It can reasonably be said that the federal program known as HAMP gave Plaintiffs hope that they could get a modification of their payments. There was no comparable state program of any kind that Plaintiffs could utilize to seek modification of their loan payments. Plaintiffs applied for relief under HAMP and, according to Plaintiffs, they did everything that was requested of them to comply with the application process. It is undisputed that Plaintiffs were never approved for modification under HAMP. The best that can be said on Plaintiffs' behalf is that some of Defendant's representatives said that Plaintiffs *would* qualify and that Plaintiffs' mortgage *would* be modified "upon receipt of requested documentation." Not to be disregarded is the fact that Plaintiff Christopher Freitas also alleged that "other representatives told [him] [he] didn't qualify for a modification. [He] could never get a straight answer." It is under these circumstances that Plaintiffs stopped payment on their loan and, not unexpectedly, foreclosure followed. Plaintiffs have no right to bring a cause of action to force a lender (Defendant) to participate in the HAMP program. To take the HAMP application process and Plaintiffs' essential claim that they were wrongfully denied a modification under HAMP and turn it into state law claims for which the requested relief would include a modification of the mortgage payment and setting aside of the foreclosure would be "boot strapping" at its finest. The long and short of all of this is simply that Plaintiffs applied for relief under a federal program, they were never approved for relief, and Plaintiffs stopped payment on their loan. If you do not have

7

a *right* to obtain the relief, conflicting representations about whether or not you *will* qualify for the relief mean nothing.  Certainly there was nothing about any of this process that could reasonably be interpreted as giving rise to a basis for Plaintiffs to stop all payments on their loan.  This would not have been the result even if they qualified under HAMP.

For the reasons stated above, Counts I, II and III in the Complaint are hereby **DISMISSED WITH PREJUDICE**.  The parties are to bear their own costs incurred in this action.

**IT IS SO ORDERED.**

DATE:   November 14, 2011                     */s/ Richard E. Dorr*
                                              RICHARD E. DORR, JUDGE
                                              UNITED STATES DISTRICT COURT